IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| MARY K. FRALIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:01cv0129 |
| v. | ) | Judge Wiseman |
| | ) | Magistrate Judge Knowles |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM ORDER**

This case is before the Court on Plaintiff's Motion for Summary Judgment, which the Court will treat and hereinafter refer to as a Motion for Judgment on the Administrative Record (Doc. Nos. 8 & 9); Plaintiff's Motions for Sentence Six and Sentence Four Remands (Doc. Nos. 19 & 27) and Defendant's Motion for Judgment on the Administrative Record (Doc. No. 14). Magistrate Judge E. Clifton Knowles issued a Report and Recommendation ("R&R") (Doc. No. 24) to which Plaintiff has filed objections. (Doc. No. 27.) Defendant Commissioner filed no response to Plaintiff's objections. Plaintiff has also filed a Memorandum of Supplemental Authority in support of Plaintiff's Motion for Judgment on the Administrative Record. (Doc. No. 28.)

Plaintiff raises several objections to the Magistrate Judge's recommendation that Plaintiff's Motion for Judgment on the Administrative Record be denied, and that the decision of the Commissioner be affirmed. The Court will consider the supplemental authority submitted by Plaintiff and if applicable, will address each of her objections in light of this supplemental authority. Upon review of the administrative record and for the reasons stated herein, the Court hereby DENIES Defendant Commissioner's Motion for Judgment on the Administrative Record (Doc. No. 14), GRANTS Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 8), REVERSES the Commissioner's ruling (Doc. No. and REMANDS the case for reconsideration of the denial of benefits and further proceedings not inconsistent with this opinion.

1

**I.    PROCEDURAL BACKGROUND**

Plaintiff Mary K. Fralix ("Plaintiff") has sought disability benefits ("DIB").  On March 19, 1998, Plaintiff filed her first application for DIB alleging that her that she has been disabled by asthma and arthritis since February 15, 1998.  The claim was denied initially and upon reconsideration by the Commissioner of Social Security ("Defendant").  Defendant granted Plaintiff a hearing after twice denying her application.  On July 26, 1999, an Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's application and on November 24,1999, the ALJ issued a written decision denying Plaintiff's applications.  (TR 23-24.)  He made findings as follows:

1. The claimant met the disability insured status requirements of the Act on February 15, 1998, the date the claimant stated she became unable to work, and continued to meet them through at least the date of this decision.

2. The claimant has not engaged in substantial gainful activity since February 15, 1998.

3. The medical evidence establishes that the claimant has "severe" impairments including asthma and chronic obstructive pulmonary disease, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, subpart P, Regulation No. 4.

4. The claimant's subjective complaints cannot be found persuasive to the extent alleged for the reasons described above.

5. The claimant has the residual functional capacity to perform work related activities including work involving medium work activity, i.e., lifting 50 pounds occasionally and 25 pounds occasionally, standing and walking, eight hours, sitting eight hours, with restrictions on working around environmental irritants and fumes.  20 C.F.R § 404.1545.

6. The claimant's past relevant work as a cosmetics assembler, food machine operator[,] and factory worker did not require the performance of work related activities precluded by the above limitations.  20 C.F.R. § 404.1565.

7. The claimant's impairments do not prevent the claimant from performing her past relevant work.

8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.  20 C.F.R. § 404.1520(e).

The Appeals Council denied Plaintiff's request for review in a letter dated October 3, 2001, but later vacated that decision in a letter dated November 27, 2001.  The Appeals Council then considered the additional evidence submitted by Plaintiff, but found that the additional evidence did not provide a basis for altering the decision of the ALJ.  The agency's decision being final, Plaintiff filed this action on November 29, 2001.

This civil action was timely filed, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  The

Court referred this matter to the Magistrate Judge who recommended that the Court deny Plaintiff's Motion for Judgment on the Administrative Record and Plaintiff's Motion for a Sixth Sentence Remand and grant Defendant's Motion for Judgment on the Administrative Record, thereby affirming the Commissioner's denial of benefits. The Magistrate Judge found that the Commissioner's findings were supported by substantial evidence, based upon the administrative record as a whole, and as such, the ALJ's findings were conclusive. Plaintiff objects to each of the Magistrate Judge's findings, except his finding that Plaintiffs' past work as a cosmetic assembler was an unsuccessful work attempt and therefore not part of her past work. Further, Plaintiff points to supplemental authority filed after her initial objections that she argues support her objection that the ALJ committed an error of law by failing to accord more weight to Plaintiffs' treating physician than to the opinion of a non-treating, non-examining physician.

On October 21, 2005, upon the recusal of the Honorable John T. Nixon, Senior United States District Court Judge for the Middle District of Tennessee, this matter was reassigned to this Court for consideration.

**II.     FACTUAL BACKGROUND**

At the time of the hearing before the ALJ in July of 1999, Plaintiff had suffered from asthma for more than ten years; she had nevertheless engaged in substantial gainful activity for much of that time. According to her medical records, Plaintiff was admitted to Columbia Hillside Hospital by William Murrey, M.D. (Dr. Murrey) for acute status asthma on August 25, 1996. (TR 143.) She was hospitalized again on April 27, 1998 for her respiratory complaints. At that time Darrel R. Rinehart, M.D. (Dr. Rinehart) conducted a consultive examination and a pulmonary function test, but he did not have access to Plaintiff's medical records. (TR 146-47.) Dr. Rinehart's report to the Consultative Examination Unit concluded that, as of that day, Plaintiff's exam was "completely normal." (TR 147.) He also stated that "[u]pon that basis, I feel that she should be able to sit, stand, lift, walk, etc. for eight hours in an eight hour work day." Id.

A short time after her April hospitalization, on May 7, 1998, Plaintiff saw George M. Bounds, M.D. (Dr. Bounds) who completed a Residual Functional Capacity Assessment. (TR 157-64.) Although he did not examine Plaintiff, he concluded that she should be able to occasionally lift/carry fifty pounds, frequently lift/carry twenty-five pounds, stand and/or walk about six hours in an eight-hour work day, sit for six hours in an eight-hour work day, and push and/or pull without limitation. (TR 158.) Dr. Bounds also recommend that

3

she avoid even moderate exposure to "fumes, odors, dusts, gases, poor ventilation, etc." (TR 161.)

On June 13, 1998, Charles D. Haney, M.D. (Dr. Haney) admitted Plaintiff to Columbia Hillside Hospital. After his examination of Plaintiff, Dr. Haney diagnosed her with asthmatic bronchitis.[1] He then conducted follow up examinations on June 26, 1998 and July 9, 1998. On August 5, 1998, Dr. Haney completed a Physical Capacities Evaluation in which he restricted Plaintiff to occasionally lifting ten pounds, sitting eight hours in an eight-hour day, and standing/walking four hours in an eight-hour day; she was also restricted from climbing and balancing and from working in certain environmental conditions. (TR 191.) Dr. Haney wrote to Plaintiff's attorney describing Plaintiff's condition and his past treatment of her in a letter dated August 25, 1998. (TR 194.) In that letter, he stated that he "would assume that [Plaintiff's condition] could be controlled well enough to perform some type of sedentary activity; however, that remains to be seen." Id.

For specialized attention, Dr. Haney referred Plaintiff to pulmanologist Robert J. Mangialardi, M.D. (Dr. Mangialardi) of the Frist Clinic. Dr. Mangialardi first examined Plaintiff on July 10, 1998 at which time he concluded that Plaintiff suffered from "severe asthma possibly related to allergy." (TR 219.) Dr. Mangialardi saw Plaintiff for a second time on September 28, 1998 and again concluded that Plaintiff suffered from "severe asthma," further stating that he would "write a letter to the state agencies related to disability on her behalf stating that she has severe asthma with waxing and waning symptoms."[2] (TR 215-16.) In a letter to Dr. Haney dated September 30, 1998, Dr. Mangialardi stated as follows: "I think that [Plaintiff] has severe asthma, and her brochospasm is likely to wax and wane with control of airway inflammation." (TR 259.) He went on to say, "[Plaintiff] has asked me to write letter to the State disability agencies on her behalf, and I am pleased to do this." Id.

On September 18, 1998, Plaintiff visited Jerry Beasley, M.D. (Dr. Beasley) for examination and treatment for her asthma. Dr. Beasley had examined/treated Plaintiff on at least one previous occasion, but not for this particular condition. Dr. Beasley saw Plaintiff again for treatment of her asthma on September

---

[1] During this time, a possible goiter was discovered, which resulted in Plaintiff's having a thyroidectomy conducted by Kenneth Jacobs, M.D. at Saint Thomas Hospital in Nashville on August 6, 1998. (TR 199-200, 225).

[2] In these post-examination/treatment notes, Dr. Mangialardi acknowledged Dr. Haney as being both Plaintiff's "primary M.D." and the referring physician. In a letter to Dr. Haney, Dr. Mangialardi refers to Plaintiff as "your patient." (TR 259.)

4

28, 1998. Further, according to records submitted to the Appeals Council, it appears that Dr. Beasley also treated and/or examined Plaintiff several times between April 9, 1999 and at least May 7, 2001; some, if not all, of these visits have been for treatment of Plaintiff's chronic asthma. There is no indication in the record that Dr. Beasley has rendered a formal evaluation of Plaintiff's occupational abilities or limitations.

Finally, on November 17, 1998, Dr. Rinehart performed a second consultive examination. In writing to the Consultive Examination Unit, he stated that Plaintiff's "lungs are clear and her Pulmonars were normal." (TR 237.) He also indicated, however, that he still did not have access to all of Plaintiff's medical records and the records would be "invaluable" to his consultation. Therefore, Dr. Rinehart concluded that his consultation was limited and "[o]nly on that basis [i.e., of that day's examination] do I feel she should be able to sit, stand, lift, walk etc. for eight hours in an eight hour work day." Id. Denise Bell, M.D., a second non-examining, non-treating physician, completed a Residual Functioning Capacity Assessment dated December 3, 1998, which essentially agreed with Dr. Bounds' assessment previously conducted in May of that year.

## III.    STANDARD OF REVIEW

This Court limits its review to the administrative record in light of the applicable law. Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Review is of "the final decision of the Secretary to determine whether it is supported by substantial evidence. Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. Plaintiff has the "ultimate burden of establishing the existence of a disability." Casey, 987 F.2d at 1233 (internal citations omitted).

This Court must accept the findings of the ALJ unless the record as a whole is lacking in substantial evidence to support the ALJ's decision. Houston v. Sec'y of Health and Human Servs., 736 F.2d 365, 366 (6th Cir. 1984). Likewise, the decision of the ALJ is undermined if he failed to consider the record as a whole. Hurst, 753 F.2d at 51. To review the decision of the ALJ, this Court looks to four types of evidence: (1) objective medical findings regarding plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of plaintiff's condition; and (4) plaintiff's age, education, and work experience. Miracle v. Celebrezze, 351 F.2d 361, 374 (6th Cir. 1965).

5

**IV.     DISCUSSION**

In addition to Plaintiff's Objections to the Magistrate Judge's Report, the Court also considers the application of the law cited in Plaintiff's Memorandum of Supplemental Authority in its review of this matter. Plaintiff's Memorandum of Supplemental Authority directs the Court to the recent Sixth Circuit decision in Wilson v. Comm'r of Soc. Sec., 378 F.3d 541 (6th Cir. 2004), which was decided after the ALJ's decision and after Magistrate Judge Knowles issued his R&R, but according to Plaintiff, speaks directly to the issues involved in the present case.

**A.     The Sixth Circuit's Application of the "Treating Source Rule" in Wilson v. Comm'r of Soc. Sec.**

In Wilson, the United States Court of Appeals for the Sixth Circuit held that, notwithstanding the fact that substantial evidence otherwise supported the Commissioner's decision to deny Plaintiff's application for disability benefits, the ALJ had run afoul of agency regulations by failing to articulate a good reason for rejecting the opinion offered by the plaintiff's treating physician. Id. at 544-45; see 20 C.F.R. § 404.1527(d)(2) (2004) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.") Therefore, the Court of Appeals held that it was necessary to remand the plaintiff's case to the Commissioner for further proceedings. By ordering the case be remanded, the Sixth Circuit reversed the ruling of the District Court. Id. at 549.

As explained by the Sixth Circuit in Wilson, the so-called "treating source rule" generally requires the ALJ reviewing a claimant's application for benefits to accord more weight to opinions from the claimant's treating sources than to those opinions offered by non-treating sources. Wilson, 378 F.3d at 544. Moreover, "[a]n ALJ must give the opinion of a treating source *controlling weight* if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" Id. (citing 20 C.F.R. § 404.1527(d)(2) (2004)) (emphasis added); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002) ("Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'") (quoting Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985)).

In deciding Wilson, the Sixth Circuit further explained that even if a treating physician's opinion does

6

not merit "controlling weight" under the regulations, the ALJ is still required to determine the amount of weight that it should receive by analyzing the opinion under the factors listed in 20 C.F.R. § 404.1527(d)(2). Wilson, 578 F.3d at 544; see Cohen v. Sec'y of Health & Human Services, 964 F.2d 524, 528 (6th Cir. 1992) (noting that treating sources usually receive great weight). Indeed, as made clear from the authorities cited by the Wilson court, the Social Security Administration has obligated itself to render decisions that "contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and . . . [that are] . . . sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Wilson, 578 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

### B. Application of the Holding in Wilson v. Comm'r of Soc. Sec.

Throughout this matter, Plaintiff has pointed to Dr. Haney as her treating physician, asserting that his opinion should be given substantial, if not controlling, weight. Yet, the ALJ did not expressly identify Dr. Haney or any other physician as Plaintiff's "treating physician." Moreover, no where in his findings did the ALJ explain either the amount of weight given to any one physician's opinion or why one opinion deserved more weight than any other opinion. In fact, as set forth in pertinent part below, it is apparent from the ALJ's opinion that he did not consider the assessments of physicians who actually examined Plaintiff and reviewed her medical records as deserving more weight than any of the other physicians' assessments contained in the administrative record:

> The undersigned finds that the claimant retains the residual functional capacity to perform at least the medium work as found by the non-treating, non-examining state agency physicians . . . This finding is substantiated by the limited treatment evidence of record, the claimant's good response to medication, and the symptoms reported which are markedly divergent to the objective signs . . . Dr. Haney, who treated the claimant only on very limited occasions and referred her to other physicians for specialized care, found the claimant to perform essentially sedentary work. Even considering his more restrictive opinion, the vocational expert testified that the claimant could still perform her past work . . . ."

(TR 21-22.) In light of the holding in Wilson and guidance provided by the Sixth Circuit, the Court finds that the above quoted language to be rather problematic for Defendant's argument in this case.

### 1. The ALJ Failed to Identify the Weight Given to Specific Physician's Opinions and the Factors Considered, If Any, In Making Those Determinations.

No one in this case denies that Plaintiff suffers from asthma. Rather, the question is whether

7

Plaintiff's asthma is severe enough to preclude gainful employment. In examining the degree of severity, there are two possible assessments of Plaintiff's condition contained in the record: the stated opinion of Dr. Haney that Plaintiff can perform "essentially sedentary" work and the opinion of the non-treating state agency physicians, who without access to Plaintiff's full medical history, found that Plaintiff can perform "medium work."[3]

The Court notes that the ALJ, as in Wilson, did not articulate whether Dr. Haney's opinion was not "well-supported by medically accepted clinical and laboratory techniques" or was "inconsistent with other substantial evidence [in the] case record." 20 C.F.R. § 404.1527(d)(2) (2006); see Wilson, 378 F.3d at 546. Presumably, it was the latter justification. But, even assuming *arguendo* that this case does present a situation in which the evidence was conflicting to such a degree that the opinion of the treating physician was not entitled to receive controlling weight,[4] there is no indication that the ALJ considered the factors required by § 1527(d)(2)(I)-(ii) to determine what weight the treating source's opinion should have received.

Moreover, even if the ALJ did apply these factors, the Court can only speculate as to what specific factors were considered and what weight was ultimately given to the source's opinion. Cf. Shkabard v. Gonzales, 427 F.3d 324, 327 (6th Cir. 2005) ("[a] reviewing court will not guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.") (internal quotation omitted). The Court therefore finds that this alone constitutes error by the ALJ, and even if the Court could itself identify a permissible basis upon which this same result could have been predicated, such action would violate fundamental principles of administrative law. See

---

[3]The characterizations "sedentary" and "medium" are the ALJ's and are supported by the testimony of Vocation Expert Kenneth Anchor (VE) at the hearing. (See TR 46.)

[4]Note must also be taken of the statement from Dr. Mangialardi, the specialist to whom Dr. Haney referred Plaintiff, that Plaintiff has "severe asthma with waxing and waning symptoms." (TR 216.) Moreover, in his own assessment of Plaintiff's condition, the non-treating examining physician, Dr. Rinehart, used language that is far from categorical and indicated that his assessments were based on the particular day's examination only. (TR 147, 237.) If Dr. Mangiarldi is correct, then logically it would seem to be entirely possible for Plaintiff's condition to be more severe on one day than on another (i.e., the day of examination by a non-treating physician). Indeed, this ability to evaluate a condition longitudinally is one reason why the agency regulations prefer opinions from treating sources. *See* 20 C.F.R. § 404.1527(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.")

8

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 169 ("A simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.") (citation omitted); Albertson's, Inc. v. N.L.R.B., 301 F.3d 441, 443 (6th Cir. 2002); N.L.R.B. v. U.S. Postal Serv., 833 F.2d 1195, 1201 (6th Cir. 1987)) ("This Court will not affirm the Board's actions based on reasons not relied upon by the Board itself.").

There is only one part of the ALJ's opinion in which he might have provided a reason for the weight accorded Dr. Haney's opinon: "Dr. Haney . . . treated the claimant only on very limited occasions and referred her to other physicians for specialized care[.]" (TR 22.) However, the Court finds that whatever validity this critique may have, it applies *a fortiori* to the opinions of the non-treating, non-examining physicians whose conclusions the ALJ expressly adopted. Without specific justification or explanation as to why that same criticism should not be just as fatal to the opinions of those non-treating, non-examining physicians, it cannot be said that the rejection of Dr. Haney's opinion was based upon a good reason. See 20 C.F.R. 404.1527(1) (2006) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

### 2. Dr. Haney Qualifies as Plaintiff's Treating Physician.

Indeed, the only way to find that the ALJ's total silence regarding the weight given to the opinion of Dr. Haney was permissible would be to find that Dr. Haney did not qualify as a "treating source" under 20 C.F.R. § 1502. It is possible that the ALJ believed that there was no one properly characterized as a treating source, yet it is clear from the record that such a decision is itself contrary to the individual facts articulated in the ALJ's own opinion indicating that, at the very least, Dr. Haney and Dr. Beasley would fit the description of a treating physician as plainly set out by § 1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). Of the two doctors, only Dr. Haney appears to have rendered a formal evaluation of Plaintiff's physical limitations.

Identification of a treating source is driven by the particularities of each situation. For example, in

9

a recent unpublished opinion, the Sixth Circuit held that a physician's opinion was not properly classified as a "treating source opinion" where a plaintiff alleging disability due to back pain and related ailments visited the particular physician only twice within a few days and received additional treatment from other physicians on a variety of separate occasions. Daniels v. Comm'r of Soc. Sec., 152 Fed. Appx. 485, 490-91, 2005 U.S. App. LEXIS 23169 at *14-16 (6th Cir. 2005). Instead, the rules contemplate a relationship appropriate to the condition for which treatment is sought. 20 C.F.R. § 404.1502 ("Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).").

The undisputed facts in this case clearly show that Dr. Haney's opinion was given in the course of a treating relationship as contemplated by the regulations. Specifically, Dr. Haney admitted Plaintiff to the hospital, visited her in the hospital, examined her in his office over the course of more than a few days, made referrals for more specialized assessments (which were then reported to him), prescribed medications and treatments, and rendered an official Residual Functioning Capacity report incident to this treatment. In fact, the actions of other medical providers at this time likewise suggest that Dr. Haney was presumed to be the treating physician. (TR 259.) This is not a relationship about which it would be reasonable to conclude that Plaintiff visited Dr. Haney solely for the purpose of obtaining a determination of disability. Cf. 20 C.F.R. § 404.1502 (2006) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."). Therefore, the Court finds that as a matter of law, this record does not permit any conclusion other than that Dr. Haney qualified as Plaintiff's treating physician as defined under § 1502.

    3.  The ALJ's Failure to Provide Reasons for Rejecting Plaintiff's Treating Physician's Opinion Is Not Harmless Error.

As the holding in Wilson makes clear, the mere existence of substantial evidence in the record capable of supporting the ALJ's opinion will not render error harmless in cases where the ALJ's findings violate 20 C.F.R. § 404.1527(d)(2). In this case, the Court finds that the ALJ violated 20 C.F.R. § 404.1527(d)(2) by both failing to give a good reason for rejecting the opinion of the treating physician and

10

failing to discuss the weight that it received in the evaluation.  Indeed, in Wilson, the Sixth Circuit specifically explained that while the ALJ's findings only violated Plaintiff's procedural right under § 1527(d)(2), "a procedural right must generally be understood as 'substantial' . . . when the regulation is intended to confer a procedural protection on the party invoking it."  Wilson, 378 F.3d at 547.  The violations of procedural rights in the case sub judice are the same as those in Wilson, and the Court in Wilson classified them as reversible error.  Id. at 546-47.

The Wilson court accepted that not every error would necessarily lead to reversal.  Id. at 547.  But, the error in this case is not *de minmis*.  As discussed above, the findings of the ALJ are at variance with those of Dr. Haney and it cannot be said that the goal of § 1527(d)(2) has otherwise been met.  Cf. Wilson, 378 F.3d at 547; see, e.g., Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 536 (6th Cir. 2001) (holding that reversal not appropriate where ALJ failed to discuss treating physician's opinion, but nevertheless made findings consistent with such opinion).  The only thing that could be said for Defendant here is that the ALJ stated, "[e]ven considering [Dr. Haney's] more restrictive opinion, the vocational expert testified that the claimant could still perform her past work as a cosmetics assembler working machine operator [*sic*]."  (TR 22.)  Plaintiff, however, has objected to this conclusion as well.  (Doc. No. 9.)

First, the Court notes that Defendant's characterization of the VE's testimony is both incomprehensible and contrary to the record.  The VE testified that Plaintiff's description of how she performed work as a "food machine operator"  was not inconsistent with Dr. Haney's restriction of standing no more than four hours per day.  (TR 47) Specifically, the VE testified that Plaintiff's [p]ast work would be available as a cosmetics assembler, and as a food machine operator *as she described her duties*."  Id. (emphasis added).  Moreover, the ALJ removed "as she described her duties" when he used this phrase.  Further, Plaintiff's job as a "food machine operator" required her, according to her unchallenged testimony, to stand five to six hours a day – an amount of time that is over the limit set by Dr. Haney.  (TR 33.)

After reviewing the record in this case, the Court is unable to reconcile the VE's statement with Plaintiff's actual testimony describing her work.  (See TR 33-44.)  It also appears contrary to the ALJ's own characterization of Dr. Haney's opinion as one limiting Plaintiff to "sedentary" work.  Thus, the Court finds the record lacking in substantial evidence to support any conclusion that Plaintiff can, consistent with Dr. Haney's

11

opinion and her own testimony, perform work as a food machine operator. The Court will instead assume for the rest of this memorandum that the ALJ meant "cosmetics assembler" and that the other words are mere typographical surplusage. The Court will not hazard guesses as to what the other words might indicate, and it will not give the agency the benefit of the doubt when it leaves the Court with this much uncertainty as to what it meant. See Shkabard, 427 F.3d at 327 (stating that the court will not "chisel that which must be precise").

Moreover, Plaintiff also objects to the ALJ's findings, arguing that her work as a cosmetics assembler does not qualify as past relevant work and that it in fact qualifies as an unsuccessful work attempt under the applicable regulations. See 20 C.F.R. § 404.1574(c)(4) (2006); see also 20 C.F.R. § 404.1574 (a)(1) ("We generally consider work that you are forced to stop or to reduce below the substantial gainful activity level after a short time because of your impairment to be an unsuccessful work attempt. Your earnings from an unsuccessful work attempt will not show that you are able to do substantial gainful activity."). Plaintiff states that she performed this job for approximately three (3) months at $5.50 per hour. (Doc. No. 9.) She also testified at the hearing that she was terminated from that position for absenteeism due to asthma. (TR 35-36.) Yet, the ALJ does not explain why he considered this to be past work rather than an unsuccessful work attempt.

Further, the Court notes that in the R&R at issue in this case the Magistrate Judge recognized that Plaintiff may be correct in characterizing this job as an unsuccessful work attempt. (R&R 27.) Without passing judgment on the issue or wishing to prejudice future proceedings, the Court agrees with Magistrate Judge Knowles's statement that Plaintiff may be correct in her contention that her work as a cosmetics assembler does not qualify past relevant work, especially given the conclusory nature of the ALJ's opinion and the absence of evidence to contradict Plaintiff's assertions. Accordingly, the Court finds that if the ALJ had afforded controlling (or even great weight) to Dr. Haney's opinion, which limited Plaintiff to "sedentary" work, and the ALJ had not characterized Plaintiff's limited work as a cosmetics assembler as past relevant work, there is a good chance that the Plaintiff would have seen a different outcome in the agency proceedings. Accordingly, the ALJ's error in not explaining the reasons for rejecting the opinion of Plaintiff's treating physician is not clearly a harmless error. Therefore, proper classification of Plaintiff's job as a

12

cosmetics assembler should also be considered upon remand.

## V. CONCLUSION

In sum, after considering the Sixth Circuit's decision in <u>Wilson v. Comm'r of Social Security</u> and reviewing the record in the present case, the Court finds that it cannot affirm the decision of the ALJ. Specifically, in light of <u>Wilson</u>, the failure of the ALJ to indicate the weight accorded to the opinion of Plaintiff's treating physician and the fact that the ALJ's findings are not consistent with the evaluation of that physician, require that the Court remand the case for reconsideration. The Court notes that while the treating physician's findings suggest that Plaintiff could perform one of her previous jobs notwithstanding her condition, the opinion of the ALJ does not indicate his reasons for classifying this job as part of Plaintiff's past relevant work experience rather than as an unsuccessful work attempt.

Thus, for the reasons stated above, the Magistrate's Report and Recommendation is adopted in part, and Plaintiff's Motion for Sentence Six Remand is DENIED. However, in light of the authority cited by Plaintiff in her Memorandum of Supplemental Authority, Defendant's Motion for Judgment on the Administrative Record is DENIED and Plaintiff's Motions for Judgment on the Administrative Record and Sentence Four Remand are DENIED in part and GRANTED in part: Plaintiff's motions are DENIED to the extent that they seek relief in the form of an immediate award of benefits, but are GRANTED to the extent that Defendant's final decision is VACATED. Thus, Plaintiff's Motion for Sentence Four Remand is hereby GRANTED in part with instructions to Defendant to conduct a rehearing. Because of the nature of the Court's decision, other than as indicated herein, the Court reserves judgment on Plaintiff's other specific objections to the Magistrate's Report and Recommendation. This cause is remanded to the agency for further proceedings not inconsistent with this opinion.

It is so ORDERED.

Entered this the 17th day of March, 2006.

_____
Thomas A. Wiseman, Jr.
Senior United States District Judge